OPINION
Appellant Gary M. Rogers appeals from an order of the Butler County Common Pleas Court, Division of Domestic Relations, finding him in contempt for failure to pay appellee Mary C. Rogers one-half of the uninsured medical expenses incurred on behalf of the parties' minor children.
We find that the trial court abused its discretion in holding Mr. Rogers in contempt of court when the record does not demonstrate clear and convincing evidence of contempt. However, we find no abuse of discretion in that part of the court's order requiring Mr. Rogers to pay $204 as his half of the uninsured medical expenses. Mr. Rogers also attacks the award of attorney fees to Ms. Rogers in connection with her motion. Since that award was predicated upon the contempt finding, which we are reversing, the award of attorney fees must be remanded to the trial court for further consideration.
Accordingly, the order of the trial court is Reversed insofar as it holds Mr. Rogers in contempt and awards Ms. Rogers her attorneys fees, but is Affirmed in all other respects. This cause is Remanded to the trial court for further proceedings in accordance with this opinion.
 I
The parties were divorced by decree on January 6, 1998. The parties, who have six minor children (Sarah, Sean, Stacey, Stephen, Shannon and Samuel), subsequently executed a Shared Parenting Plan, which provided in pertinent part as follows:
III. HEALTH CARE
 Any uninsured medical, hospital, dental or orthodontic expenses, incurred for and on behalf of the minor children, shall be divided equally between the parties, and the parties shall attempt to reconcile the payment of uninsured expenses on a monthly basis.
* * *
 The parties shall communicate with each other regarding the necessary medical care of the minor children; except, in the case of emergency, or it is otherwise impractical to communicate beforehand. The parties shall exchange any and all medical information, including bills, health insurance forms, medical reports and any other documentation relevant to the health care of the minor children.
On July 16, 1999, Ms. Rogers filed a motion seeking to hold Mr. Rogers in contempt for failure to pay one-half of the children's uninsured medical expenses.
At the hearing, Ms. Rogers testified that she had given Mr. Rogers notice, by mail, of the medical expenses. The claimed expenses were for services from the following providers: (1) Christ Hospital; (2) Mercy Hospital; (3) Reconstructive Orthopaedics, Inc.; (4) Dr. Daniel Kroger [optometrist]; and (5) Frieman and French D.D.S., Inc. [dentist]. The exhibits submitted by Ms. Rogers as proof of her claims included insurance company explanation of benefits forms for the Christ Hospital and dental expenses. She submitted actual provider bills from Mercy Hospital, Reconstructive Orthopaedics, Inc., and Dr. Kroger.
Following the hearing, the trial court found Mr. Rogers in contempt of court. The trial court ordered Mr. Rogers to pay Ms. Rogers $204.77 for medical expenses, $50 for court costs and $250 for attorney fees. From this judgment, Mr. Rogers appeals.
 II
Mr. Rogers's First Assignment of Error states as follows:
 THE TRIAL COURT ERRED BY FINDING DEFENDANT-APPELLANT IN CONTEMPT.
Mr. Rogers contends that the trial court abused its discretion by finding him in contempt of court for failing to pay for one-half of the minor children's uninsured medical expenses. In support, he argues that he cannot be found in contempt, because Ms. Rogers failed to comply with the Shared Parenting Plan by failing to adequately communicate with him in regard to the expenses, and by failing to pay her portion of the expenses before seeking reimbursement.
"A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." Moraine v. Steger Motors, Inc. (1996),111 Ohio App.3d 265, 268, citing ConTex, Inc. v. ConsolidatedTechnologies, Inc. (1988), 40 Ohio App.3d 94. "`Clear and convincing evidence' has been defined as `that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Ohio State Bar Assn. v. Reid
(1999), 85 Ohio St.3d 327, 331, citations omitted. A reviewing court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion. State, exrel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11. With this standard in mind, we must examine the record to determine whether the evidence shows that Mr. Rogers failed to comply with his duties.
We begin by noting that the Shared Parenting Plan executed by the parties does not require that Ms. Rogers pay all of her portion of the uninsured expenses prior to asking Mr. Rogers to pay his share. Therefore, her failure to have done so did not relieve him of his duty. However, we find that the Plan, at least implicitly, requires that the parties communicate or exchange information in regard to the expenses incurred for medical services provided to the children. Otherwise, one spouse could incur expenses, and then seek to have the other spouse held in contempt for failing to pay half of an expense concerning which the other spouse was ignorant. In other words, the duty to pay cannot be triggered without communication regarding the fact that the bills have been incurred, the amount of the bills, and the amount of the bills not covered by insurance. Clearly, the obligor spouse must have sufficient information concerning the existence and extent of his obligation before he can be in contempt for failing to pay that obligation.
A review of the record in this case reveals that although Ms. Rogers testified that she had forwarded the bills and insurance statements to Mr. Rogers, there is no evidence to show when the documents were sent, and there is no documentary evidence to support her claim that she sent a cover letter or any sort of explanation or demand of money along with the documents. Furthermore, the evidence supports a finding that Mr. Rogers attempted to obtain an explanation as to the bills and the amount owed by him. As the trial court stated in its judgment, the evidence "establish[es] a pattern of mis-communication between the parties." We do not consider it unreasonable, before making a payment in accordance with the decree, to request that the party incurring the expense provide some explanation to the other party as to the amount of money owed beyond merely sending unexplained copies of bills and insurance statements.
The record also shows that prior to the contempt hearing, Mr. Rogers did in fact make payment in full on six of the ten subject bills, and paid most of the bill to Reconstructive Orthopaedics, Inc.[1] Further, the record shows that a genuine dispute existed whether the amount sought by Ms. Rogers for the eyeglasses was an expense that Mr. Rogers was obligated to pay. The record also shows that the bill from Mercy Hospital contained no explanation why the expense was incurred.
Given that the trial court specifically found a pattern of mis-communication between the parties in regard to the bills, and that the undisputed testimony of Mr. Rogers shows that he did attempt to seek an explanation of the bills to determine what he owed on them, and that he did pay most of the subject bills prior to the contempt proceeding, we find that the record does not contain clear and convincing evidence of actions constituting contempt.
Accordingly, the First Assignment of Error is sustained.
 III
THE TRIAL COURT ERRED BY AWARDING MEDICAL EXPENSES.
Mr. Rogers next contends that the trial court should not have awarded medical expenses. In support, he argues that Ms. Rogers violated the Shared Parenting Plan because she did not submit actual bills on all of the claims and did not consult with him prior to seeking the medical services. He also argues that he should not be required to pay the bills because Ms. Rogers admitted that she was not certain as to the amount he had paid on one bill. He finally argues that he should not be held responsible for payment of any uninsured expenses for one child's eyeglasses.
According to the record, Ms. Rogers did not send the medical provider bills in regard to all of the claimed expenses. Instead, as noted above, she merely sent insurance company explanation of benefits forms in regard to some of the expenses. However, from our review of the Shared Parenting Plan, we find that it is ambiguous as to whether the parties are required to submit the actual bills when seeking reimbursement. In fact, the insurance benefit forms which Ms. Rogers submitted in regard to the children's dental expenses were quite detailed, and could reasonably be considered sufficient documentation of claimed expenses. Thus, we cannot say that Ms. Rogers violated the Plan by submitting the insurance forms rather than the bills.[2]
We also find that Mr. Rogers's claim that Ms. Rogers failed to communicate with him prior to seeking medical services for the children is not supported by the record. Therefore, we find no merit in this claim.
We next address the claim that the trial court erred by ordering payment, since Ms. Rogers was not certain as to the amount that Mr. Rogers had paid in satisfaction of his half of the bill owed to Reconstructive Orthopaedics, Inc. A review of the testimony indicates that Ms. Rogers testified that Mr. Rogers had paid a portion of the bill, but that he still owed her approximately $20 to $27 for that provider. Mr. Rogers did not submit any evidence to dispute this amount, and therefore, we find his argument to be without merit.[3]
Finally, we address the issue of the eyeglasses. Mr. Rogers contends that he the trial court erred by requiring him to pay for half of Sarah's eyeglasses. He argues that expenses for eyeglasses do not fall under the Shared Parenting Plan, which only requires payment for "medical, hospital, dental or orthodontic expenses." In support, he cites Minick v. Minick (Aug. 14, 1981), Ottawa App. No. OT-81-3, unreported. In Minick, the court held that a spouse was only responsible for optical expenses of a "* * * medical nature such as those services provided by an ophthalmologist, a medical doctor dealing with diseases of the eye, and hence does not include such things as glasses furnished by an optometrist or those that may be secured from a corner dime store."
We decline to follow Minick. We conclude that the cost of eyeglasses prescribed for correction of a person's vision, whether prescribed by an optometrist or by an ophthalmologist, is an expense of a medical nature. Therefore, we reject Mr. Rogers's argument.[4]
The record supports a finding that the medical expenses were incurred, and that Mr. Rogers is responsible for one-half of the uninsured amount. Therefore, the trial court did not abuse its discretion by ordering him to make payment. However, according to our calculations, which are based upon the exhibits submitted by Ms. Rogers, the outstanding expenses only totaled $202.77. Although the trial court ordered Mr. Rogers to pay $204, we cannot say that a miscalculation of less than two dollars constitutes an abuse of discretion requiring reversal.
The Second Assignment of Error is overruled.
 IV
THE TRIAL COURT ERRED BY AWARDING ATTORNEYS' FEES AND COSTS.
In his appellate brief, Mr. Rogers argues that the trial court erred by awarding attorney fees and costs because Ms. Rogers failed to present evidence of the reasonableness or necessity of the services. However, during oral argument, Mr. Rogers withdrew the argument insofar as it pertained to the amount of the fees awarded.
Since we have reversed the judgment of contempt, and it appears that the assessment of the fees was made solely upon the finding of contempt, we reverse the award of attorneys fees and remand the issue of attorney fees to the trial court for a determination of whether attorneys fees should be awarded pursuant to R.C. 3113.219(B) on the court's finding that the medical expenses that it ordered Mr. Rogers to pay constitute "an amount of support to be paid pursuant to a support order."
The trial court had discretion to award costs to either party, and we cannot say that the trial court erred by awarding costs, in the amount of $50 to Ms. Rogers, even in the absence of a contempt finding.
Accordingly, the Third Assignment of Error is sustained as to the award of attorneys fees, and overruled as to costs.
 V
Mr. Rogers's First and Third Assignments of Error having been sustained, that portion of the order of the trial court finding Mr. Rogers in contempt and awarding attorneys fees is Reversed, the order of the trial court is Affirmed in all other respects, and this cause is Remanded for further consideration of the award of attorney fees.
GRADY, P.J., and BROGAN, J., concur.
Grady, P.J., Brogan, J., and Fain, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), of the Ohio Constitution.
[1] According to the exhibits submitted by Ms. Rogers, Mr. Rogers owed her $343.97 for his one-half of the outstanding bills. At the time of the hearing, Mr. Rogers had paid $141.20 toward the bills, leaving a balance of $202.77 ($137.27 of which was owed on the eyeglasses, $20 to Reconstructive Orthopaedics, Inc., $12.50 to Mercy Hospital, and $33 to Christ Hospital).
[2] However, it would appear that the parties could avoid similar difficulties in the future by simply submitting copies of the bills and any insurance statements, as well as providing a cover letter specifying the amount sought from the other party, together with any explanation that might be reasonable or appropriate.
[3] It is clear from the record that the trial court used the smaller amount, $20, when calculating the amount owed by Mr. Rogers.
[4] Although we conclude that the cost of prescription eyeglasses reasonably necessary to correct the wearer's vision is a medical expense, we note that any portion of the cost of the eyeglasses not reasonably attributable to correcting vision would not be a medical expense. Thus, the purchase of designer eyeglasses, at a premium price, or the purchase of eyeglasses with extra features that are not necessary to correct the wearer's vision, would include both a covered, medical expense component, and a non-covered component. In the case before us, there is no evidence that the eyeglasses purchased included any component of expense that was not reasonably necessary to correct Sarah's vision.